Peter E. Root (SBN 142348)
proot@dl.com
DEWEY & LEBOEUF LLP
1950 University Avenue, Suite 500
East Palo Alto, CA 94303-2225
Tel.  650.845.7000
Fax.  650.845.7333

Jeffrey L. Kessler
jkessler@dl.com
A. Paul Victor
pvictor@dl.com
Adam J. Kaiser
akaiser@dl.com
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019-6092

Attorney for Defendants
PANASONIC CORPORATION OF NORTH AMERICA, and
PANASONIC CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONGO BURGER, INC., on behalf of itself and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> TECUMSEH PRODUCTS COMPANY, ET AL., <br><br> Defendants | Case No. 3:09-cv-01836 MMC <br><br> **FOREIGN DEFENDANTS' OPPOSITION TO BONGO BURGER, INC.'S MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)** <br><br> Date:   June 19, 2009 <br> Time:  9:00 a.m. <br> Court: Seven, 19th Floor <br><br> The Honorable Maxine M. Chesney |

# TABLE OF CONTENTS

Page(s)

STATEMENT OF THE ISSUE ................................................... 1

STATEMENT OF RELEVANT FACTS........................................ 2

ARGUMENT ....................................................................... 2

I.     The Plaintiff's Motion is Premature.................................... 2

II.    The Court Should Decline To Authorize Service Pursuant To Rule 4(f)(3) Because Plaintiff Has Not Shown That It Either Attempted To Serve The Foreign Defendants Or That The Foreign Defendants Have Evaded Service.................... 4

III.   Service of the Foreign Defendants Danfoss, ACC and Panasonic is Governed by Both the Federal Rules of Civil Procedure and the Hague Convention ............................. 5

IV.   The Hague Convention and the Federal Rules of Civil Procedure Do Not Authorize Service on a Foreign Corporation Through its Subsidiaries or Counsel.................................................................... 7

CONCLUSION ................................................................. 12

1

# TABLE OF AUTHORITIES

2

**CASES**      **Page(s)**

3

*Brockmeyer v. May,*
   383 F.3d 798 (9th Cir. 2004) ........................................................7

4

*Agha v. Jacobs,*
   No. C-07-1800 (RS), 2008 WL 2051061 (N.D. Cal. May 13, 2008) ...............10

5

*Bank Julius Baer & Co. v. Wikileaks,*
   No. C-08-00824 (JSW), 2008 WL 413737 (N.D. Cal. Feb 13, 2008) ...........11

6

7

*Darden v. DaimlerChrysler N. Am. Holding Corp.,*
   191 F. Supp.2d 382 (S.D.N.Y. 2002) ...............................................3

8

*Dreyer v. Exel Indus., Inc.,*
   No. 05-10285, 2007 WL 1584205 (E.D. Mich. May 31, 2007)..................3

9

10

*Ehrenfeld v. Salim a Bin Mahfouz,*
   No. 04-civ-9641 (RCC), 2005 WL 696769 (S.D.N.Y. Mar. 23, 2005)...........11

11

*In re Aftermarket Automotive Lighting Prod. Antitrust Litig.,*
   598 F. Supp. 2d 1366 (J.P.M.L. 2009) .............................................2

12

13

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
   No. 2:09-cv-5944 (SC), Dkt. No. 374 (N.D. Cal. Sept. 3, 2008) ...........4, 8, 9

14

*In re LDK Solar Sec. Litig.,*
   No. C-07-05182 (WHA), 2008 WL 2415186 (N.D. Cal. Jun. 12, 2008).........4, 5, 11

15

*Nanya Tech. Corp.n v. Fujitsu Ltd.,*
   Civ-06-00025, 2007 WL 269087 (D. Guam Jan. 26, 2007) ....................12

16

17

*Rio Props., Inc. v. Rio Int'l Interlink,*
   284 F.3d 1007 (9th Cir. 2002)..............................................*passim*

18

*Volkswagenwerk Aktiengesellschaft v. Schlunk,*
   486 U.S. 694 (1988)......................................................*passim*

19

**RULES**

20

Fed. R. Civ. P. 4 (f)(1).................................................6, 9, 10, 12

21

Fed. R. Civ. P. 4(f)(2)...............................................................11

22

Fed. R. Civ. P. 4(f)(3)..........................................................*passim*

23

Fed. R. Civ. P. 4(f)(2)(c)(i)........................................................5

28 U.S.C. § 1407 ....................................................................2

24

**TREATIES**

25

26

Hague Convention of 15 November 1965 on the Service Abroad of Judicial
   and Extrajudicial Documents in Civil or Commercial Matters,
   20 U.S.T. 36...........................................................*passim*

27

28

ii

Inter-American Convention on Letters Rogatory and Additional Protocol ..........................1, 2, 3

**OTHER AUTHORITIES**

Gary B. Born, *International Civil Litigation In United States Courts,*
     863 & n.4 (4th ed. 2007) ...................................................................................5

Wright and Miller, 4B Federal Practice and Procedure § 1134 (2009 Supp. at 44) ........................9

Danfoss A/S ("Danfoss"), Appliance Components Companies S.p.A. ("ACC"), Whirlpool S.A. (Whirlpool), Tecumseh do Brasil, Ltda. ("Tecumseh") and Panasonic Corporation ("Panasonic") (collectively, "Foreign Defendants"), jointly file this opposition to Bongo Burger, Inc.'s Motion to Authorize Service on Certain Foreign Defendants Pursuant to Fed. R. Civ. P. 4(f)(3). Foreign Defendants file this opposition to ensure that Plaintiff serves them in compliance with the Federal Rules of Civil Procedure, the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), and the Inter-American Convention on Letters Rogatory and Additional Protocol ("Inter-American Convention"). By filing this opposition, Foreign Defendants do not make a general appearance in this action and specifically reserve all defenses they may have under the Federal Rules of Civil Procedure and federal and state law.[1]

## STATEMENT OF THE ISSUE

Whether Bongo Burger, Inc. ("Plaintiff") may serve Foreign Defendants with a copy of the summons and complaint through their related domestic entities and their counsel, in circumstances where: (1) the action has only recently been commenced and will likely soon be consolidated by the Judicial Panel on Multidistrict Litigation ("JPML") together with forty-seven related actions and transferred to a single court for coordinated pretrial proceedings; (2) there has been no showing that the Foreign Defendants have attempted to evade service; (3) there has been no showing that Plaintiff has attempted to serve the Foreign Defendants by the methods prescribed by the Hague Convention or Inter-American Convention; and (4) neither the Hague Convention nor the Federal Rules of Civil Procedure expressly authorizes service on foreign entities through their domestic subsidiaries and/or affiliates or counsel.

---

[1] By filing this opposition, Foreign Defendants do not consent to this Court's jurisdiction and expressly reserve any argument concerning *in personam* jurisdiction until such time as proper service is effected.

## STATEMENT OF RELEVANT FACTS

On April 28, 2009, Plaintiff brought this action in the Northern District of California on behalf of itself and a putative class consisting of indirect purchasers of hermetic compressors. It is one of forty-eight actions filed in eight different districts across the country, most of which were filed before this case. To date, Plaintiff has not attempted to serve Defendants in the manner prescribed by either the Hague Convention or Inter-American Convention. On May 15, 2009, Plaintiff filed a motion seeking the Court's approval to serve the Foreign Defendants through their related domestic entities and counsel.

## ARGUMENT

### I.     The Plaintiff's Motion is Premature

The Court should deny Plaintiff's motion as premature. The decision whether to authorize service pursuant to Rule 4(f)(3) is purely discretionary. *See, e.g., Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). Because the JPML will likely transfer this action to another district court in the very near future, this Court should exercise its discretion to deny or, in the alternative, defer ruling on Plaintiff's motion. Accordingly, the Domestic Defendants[2] have filed a simultaneous motion to stay this action until the JPML rules on the pending motions to consolidate and transfer this case and the forty-seven related actions (collectively, the "Related Actions").

On May 27, 2009, the JPML heard argument on several motions to transfer pursuant to 28 U.S.C. § 1407 and the JPML is expected to issue a decision by mid-June 2009. It is likely that the JPML will consolidate the Related Actions, and in fact no party has opposed consolidation. *See, e.g., In re Aftermarket Automotive Lighting Prod. Antitrust Litig.*, 598 F.

---

[2]     As referenced herein, "Domestic Defendants" are Panasonic Corporation of North America ("PNA"); ACC USA, Inc.; Emerson Climate Technologies, Inc.; Copeland Corporation LLC; CR Compressors LLC; Scroll Compressors LLC; Danfoss Commercial Compressors, Ltd.; Danfoss, Inc.; Danfoss Scroll Technologies LLC; Danfoss Turbocor Compressors, Inc.; Danfoss Compressors LLC; Whirlpool Corporation; Embraco North America, Inc.; Tecumseh Products Company; and Tecumseh Compressor Company.

1   Supp. 2d 1366 (J.P.M.L. 2009) (ordering transfer and consolidation in antitrust class action

2   with 22 related actions).  Further, no party has sought consolidation in the Northern District of

3   California.  Even Plaintiff Bongo Burger has expressly sought consolidation in the District of

4   New Jersey.

5          Transfer and consolidation to a single court will ensure that a single district

6   court judge is responsible for coordinating pretrial proceedings.  Having a single judge charged

7   with conducting pretrial proceedings is one of the principal advantages of the JPML process; it

8   minimizes the possibility that identically-situated parties will be subject to inconsistent rulings.

9          This goal of consistency would be lost if transferor courts issued rulings on the

10  eve of consolidation.  That is certainly the case here.  Like other pretrial matters, the issue of

11  ordering service pursuant to Rule 4(f)(3) should be decided by the transferee court, applying a

12  single body of law, after it has heard from all interested parties.  For example, Plaintiff argues

13  that one of the reasons it requires this Court's intervention to serve the Foreign Defendants is

14  because it will cost Plaintiff $10,000 to do so.  Yet, that consideration may be absent before the

15  transferee court; it may apply a different calculus, one in which cost is a less relevant factor than

16  compliance with the Hague Convention and/or the Inter-American Convention.  By the same

17  token, the law pertaining to service upon foreign defendants is unsettled and may vary with the

18  jurisdiction.  For instance, in the Eastern District of Michigan (where the most actions have

19  been filed and where numerous plaintiffs have requested these cases be transferred) a party that

20  wishes to serve a foreign parent corporation through its U.S. subsidiary – the precise situation

21  here – must satisfy a demanding standard, one that requires proof similar to that necessary to

22  pierce a corporate veil.  *Cf., e.g., Dreyer v. Exel Indus., Inc.*, No. 05-10285, 2007 WL 1584205,

23  at *3-4 (E.D. Mich. May 31, 2007).  Another plaintiff seeks transfer to the Southern District of

24  New York, which applies a  test similar to the one in Michigan  *Cf., e.g., Darden v.*

25  *DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp.2d 382, 387-89 (S.D.N.Y. 2002).  Foreign

26  Defendants respectfully submit that it would appropriate to defer to the transferee court to rule

27  on this issue as needed.

28

1  In addition, even setting aside the pending JPML proceedings, this is an

2  unusually early juncture for the Court to consider a motion relating to service on foreign

3  defendants.  In the cases cited by Plaintiff, the district courts typically did not confront this issue

4  until the litigation had been ongoing for some period of time and presumably in which some

5  factual development had taken place regarding, for example, whether the foreign entities were

6  of any relevance to the litigation.  *See, e.g., In re:  Cathode Ray Tube (CRT) Antitrust Litig.*, No.

7  2:09-cv-5944 (SC), Order Granting Indirect Purchaser Plaintiffs' Motion To Authorize Service

8  Pursuant to Federal Rule of Civil Procedure 4(f)(3) (Dckt # 374) (N.D. Cal. Sept. 3, 2008)

9  (Conti, J.) (unreported decision) ("Sept. 3 Order"); *In re LDK Solar Sec. Litig.*, No. C-07-05182

10  (WHA), 2008 WL 2415186 (N.D. Cal. Jun. 12, 2008) ("*LDK*") (order granting plaintiffs' Rule

11  4(f)(3) motion more than a year into the litigation).[3]

12  In light of the early state of this litigation, and the advanced stage of the JPML

13  proceedings (with oral argument already having taken place), the Court should exercise its

14  discretion to deny Plaintiff's motion, or in the alternative, defer ruling until after the JPML

15  issues its decision.

16  **II.    The Court Should Decline to Authorize Service Pursuant to Rule 4(f)(3)
        Because Plaintiff Has Not Shown that it Either Attempted to Serve the Foreign
17      Defendants or that the Foreign Defendants Have Evaded Service**

18  In virtually every case cited by Plaintiff in which a court has permitted a foreign

19  defendant to be served through its domestic subsidiary or U.S. counsel, there has been a clear

20  showing that the plaintiff either attempted to serve the foreign defendant or that the foreign

21  defendant evaded service.  In this case, Plaintiff has shown neither.  For that reason alone, the

22  Court should deny Plaintiff's Rule 4(f)(3) motion as premature.

23  In *Rio Properties*, for example, the plaintiff was unable to serve the foreign

24  defendant (who was based in Costa Rica) by conventional means in the United States because

25  the foreign defendant's United States address housed only its international courier, which

26  refused to accept service.  *Rio Properties*, 284 F.3d at 1016.  The plaintiff then tried to serve the

27  ───────────────

28  [3]  By referencing these decisions here, Foreign Defendants in no way concede the correctness
     of those decisions.

1   foreign defendant in Costa Rica by hiring a private investigator to locate the defendant but this,

2   too, was unsuccessful.  Only then did the plaintiff move for service pursuant to Rule 4(f)(3), and,

3   as the Ninth Circuit explained, "when [the plaintiff] presented the district court with its inability

4   to serve an elusive defendant, striving to evade service of process, the district court properly

5   exercised its discretionary powers to craft alternative means of service."  *Id.*

6          Two other cases cited by Plaintiff, *LDK* and *Ehrenfeld v. Salim a Bin Mahfouz*,

7   No. 04-civ-9641 (RCC), 2005 WL 696769 (S.D.N.Y. Mar. 23, 2005) ("*Ehrenfeld*") also

8   involved elusive defendants.  In *LDK*, defense counsel acknowledged that "it might be

9   impossible to serve some of [the unserved defendants]."  *LDK*, 2008 WL 2415186, at *3

10  (quotations omitted) (addition in original).  The court in that case, relying on *Rio Properties,*

11  noted that a district court may craft alternative means of service when a defendant is elusive.

12  *Id.*; *see Rio Properties*, 284 F.3d at 1016.  Likewise, in *Ehrenfeld*, the defendant, who was also

13  involved in a suit stemming from the September 11, 2001 terrorist attacks, was thought to be

14  located in Saudi Arabia.  *Ehrenfeld*, 2005 WL 696769, at *1-2.  Plaintiff's counsel, however,

15  could not find the defendant's address and encountered other obstacles in attempting to serve

16  the defendant.  In the present case, in contrast, Plaintiff has offered no suggestion that Foreign

17  Defendants are evading service.

18  **III.     Service of the Foreign Defendants Danfoss, ACC and Panasonic is Governed
            by Both the Federal Rules of Civil Procedure and the Hague Convention**

19

20          In relevant part, Fed. R. Civ. P. 4(h) provides that a foreign corporation "must be

21  served . . . at a place not within any judicial district of the United States, in any manner

22  prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(c)(i)."

23  Also in relevant part, Rule 4(f) allows for service "(1) by any internationally agreed means of

24  service that is reasonably calculated to give notice, such as those authorized by the Hague

25  Convention . . . or (3) by other means not prohibited by international agreement, as the court

26  orders."

27

28

1    Article 1 of the Hague Convention states that the Convention applies "in all

2  cases, in civil or commercial matters, where there is occasion to transmit a judicial or

3  extrajudicial document for service abroad."  20 U.S.T. 361, 362.  If the Hague Convention

4  applies, it is the exclusive means of service on a foreign entity.  *Volkswagenwerk*

5  *Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) ("By virtue of the Supremacy Clause,

6  U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by

7  state law in which it applies.").  As noted by one commentator:

8       Most U.S. courts have concluded that, if service is to be made in the

9       territory of a contracting state, and if the Hague Service Convention

10      is available for such service, then the Convention *must* be complied

11      with.  According to these courts, traditional mechanisms for U.S.

12      extraterritorial service – including Federal Rule of Civil Procedure 4

13      and its state counterparts – are preempted by the Convention when

14      service must be made within a contracting state . . . . [A] few lower

15      courts reached contrary conclusions, but these decisions almost

16      certainly do not survive *Volkwagenwerk*.

17  Gary B. Born, *International Civil Litigation In United States Courts*, 863 & n.4 (4th ed. 2007)

18  (emphasis in original).  Accordingly, because the United States, Japan, Denmark and Italy are

19  signatories to the Hague Convention, that treaty establishes the procedure for service of

20  Danfoss, ACC and Panasonic.

21  **IV.    The Hague Convention and the Federal Rules of Civil Procedure Do Not**
       **Authorize Service on a Foreign Corporation Through its Subsidiaries or**
22     **Counsel**

23      Plaintiff does not assert that service upon a domestic subsidiary or counsel

24  qualifies as a means of service under the Hague Convention.  Indeed, neither of these methods

25  of service are authorized by the Convention.  Rather, Plaintiff argues that service through the

26  Hague Convention, as set forth in Rule 4(f)(1), can be ignored in favor of service *via* "other

27  means," as set forth in Rule 4(f)(3), because court-ordered service under Rule 4(f)(3) is equal to

28  an internationally agreed means of service under Rule 4(f)(1).  Plaintiff is wrong.

6

1    The Supreme Court has recognized the mandatory nature of the Hague

2    Convention, noting that it preempts "inconsistent methods of service."  *Volkswagenwerk*, 486

3    U.S. at 699.  The mandatory nature of the Hague Convention is also reflected in the 1993

4    Advisory Committee notes to Rule 4(f), which provide that "[u]se of the Convention

5    procedures, when available, is mandatory if documents must be transmitted abroad to effect

6    service."  Service on a subsidiary or counsel is a method of service that is "inconsistent" with

7    the Hague Convention.  Thus, Plaintiff's proposed means of service should be rejected by the

8    Court.

9    Because of the mandatory nature of the Hague Convention, the Plaintiff's

10   reliance on Rule 4(f)(3) is unavailing.  Pl. Brief, at 5-6.  That rule authorizes service on foreign

11   corporations "by other means not prohibited by international agreement, as the court orders."

12   Fed. R. Civ. P. 4(f)(3).  Given the text of the Convention, the Supreme Court's pronouncement

13   in *Volkswagenwerk*, and the 1993 Advisory Committee notes, it is clear that the means of service

14   set forth in the Hague Convention are the *exclusive* means of service authorized by that treaty.

15   They are not mere guidelines or suggestions for signatory nations to follow.  *Accord*

16   *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) ("Because service of process was

17   attempted abroad, the validity of service is controlled by the Hague Convention, to the extent

18   that the Convention applies") (citations omitted).

19   Plaintiff's reliance on *Volkswagenwerk* is therefore misplaced because

20   transmittal abroad *is* required in this action.  The Supreme Court in *Volkswagenwerk* concluded

21   that the Hague Convention did not apply because the state long-arm statute at issue required

22   that any domestic subsidiary doing business in the state would serve as the "the foreign

23   corporation's *involuntary agent* for service of process."  *Volkswagenwerk,* 486 U.S. at 696

24   (emphasis added).  There was no need to transmit service abroad because, by dint of state law,

25   the subsidiary was the foreign corporation's involuntary agent for service of process.  The

26   Hague Convention, therefore, was not implicated.  *Id.* at 707.  That is not true here.  There is

27   nothing in the Federal Rules of Civil Procedure, or the federal common law, that automatically

28   causes domestic subsidiaries to become involuntary service agents for their foreign parents, and

7

1   none of the Defendants' domestic subsidiaries (or counsel) are authorized agents to accept

2   service on behalf of the foreign corporations.  Hence, transmittal abroad is required to serve

3   ACC, Danfoss and Panasonic.  Service of ACC, Danfoss and Panasonic must therefore be

4   accomplished pursuant to the mandatory language of the Hague Convention.

5          For these reasons, the unreported decision in *In Re Cathode Ray Tube (CRT)*

6   *Antitrust Litigation* ("*CRT*") is erroneous.  No. 2:09-cv-5944 (SC), Dckt. No. 374.  In *CRT*, the

7   court held that because the foreign defendants could be served through their domestic

8   subsidiaries or counsel, transmittal abroad was not required and that, therefore, the Hague

9   Convention was not implicated. Sept. 3 Order, at 3 n.3.  But service upon a domestic subsidiary

10  can only be accomplished if there is some basis in law to hold that the subsidiary is an agent for

11  service of process.  In *Volkswagenwerk*, the legal basis was provided by Illinois' long-arm

12  statute.  Under federal law, to make the domestic subsidiary an agent of the foreign parent, the

13  plaintiff needs to submit evidence sufficient to establish an agency relationship.  As stated by

14  esteemed authority:

15          Under the Hague Convention, it is possible for a party to

16          serve process on a foreign corporation by effecting service

17          on a domestic corporation if the domestic corporation is

18          considered a subsidiary of the foreign corporation.  The

19          subsidiary exception to the Hague Convention applies if the

20          party serving process can demonstrate an agency

21          relationship between the corporations or alternatively that

22          the domestic company is a mere department of the foreign

23          corporation.  To establish an agency relationship, the party

24          must show not only ownership, but also that the subsidiary

25          performs all the functions that the parent corporation would

26          do if it were present.  Alternatively, to show that the

27          subsidiary is a mere department of the foreign corporation,

28          the plaintiff must address whether there is common

8

1      ownership, the financial dependency of the subsidiary on the

2      parent corporation, and the parent's control over the

3      subsidiary's selection of executives and marketing

4      operations.

5   Wright and Miller, 4B *Federal Practice and Procedure* § 1134 (2009 Supp. at 44).

6          Under *CRT*, any foreign defendant would lose its rights under the Hague

7   Convention simply by creating a domestic subsidiary, because any such subsidiary would

8   automatically become the parent's involuntary agent for service of process. That cannot be the

9   law, and is not the law, as reflected in Wright and Miller. Indeed, *CRT* fundamentally

10  misapplies *Volkswagenwerk*, by grafting Illinois long-arm statute upon the federal common law,

11  while in fact *Volkswagenwerk* excused compliance with the Hague Convention precisely

12  because of Illinois' unique statute. The court in *CRT* also ruled that, under the Hague

13  Convention, foreign corporations could be served through their "domestic subsidiaries or

14  domestic counsel." Sept. 3 Order, at 3. This reasoning eviscerates the mandatory language of

15  that treaty. Indeed, taking *CRT* to its logical conclusion, the Hague Convention is a

16  meaningless document, because any foreign defendant who hired counsel in the United States

17  to contest service would be making such counsel an involuntary agent for service of process.

18  These outcomes cannot be squared with the mandatory procedures established by the Hague

19  Convention. *Accord Volkswagenwerk*, 486 U.S. at 705 ("we do not think that this country, or

20  any other country, will draft its internal laws deliberately so as to circumvent the [Hague]

21  Convention in cases in which it would be appropriate to transmit judicial documents for service

22  abroad").

23         Moreover, contrary to Plaintiff's claims, the primary case that it relies upon –

24  *Rio Properties* – supports Defendants' position. In that case, a hotel operator sued an internet

25  business entity located in Costa Rica for trademark infringement. Service was effectuated

26  through email and regular mail, pursuant to Rule 4(f)(3). The method of service was sustained

27  by the Ninth Circuit. Critically, though, the Ninth Circuit made the following observation: "[a]

28  federal court *would be prohibited* from issuing a Rule 4(f)(3) order in contravention of an

9

1   international agreement, *including the Hague Convention referenced in Rule 4(f)(1)*.  The

2   parties agree, however, that the Hague Convention does not apply in this case because Costa

3   Rica is not a signatory."  *Id.* at 1015 n.4 ("Footnote 4") (emphasis added).

4           In its motion, Plaintiff ignores Footnote 4 of *Rio Properties*.  Having ignored

5   that footnote, Plaintiff misconstrues that case and the interplay between Rule 4(f)(1) and 4(f)(3).

6   Before the Ninth Circuit, the Costa Rican internet business entity argued that "Rule 4(f) should

7   be read to create a hierarchy of preferred methods of service of process."  *Rio Properties*, 284

8   F.3d at 1014.  In response to this argument, the Ninth Circuit explained that, "[b]y all

9   indications, court-directed service under Rule 4(f)(3) is as favored as service available under

10   Rule 4(f)(1)$^{FN4}$ or Rule 4(f)(2)."  *Id.* at 1015.  The placement of Footnote 4 reveals that the

11   Ninth Circuit meant that Rule 4(f)(1) and Rule 4(f)(3) are equivalents *only* when the Hague

12   Convention is not in effect.  Here, the Hague Convention is in effect with respect to the United

13   States, Japan, Denmark and Italy.  Thus, Plaintiff is incorrect when it argues that Rule 4(f)(1)

14   (service *via* internationally agreed means) need not be pursued before resorting to Rule 4(f)(3)

15   (court-ordered service).

16           This interpretation of *Rio Properties* is also supported by other decisions of this

17   Court.  In *Agha v. Jacobs*, No. C-07-1800 (RS), 2008 WL 2051061 (N.D. Cal. May 13, 2008),

18   the Northern District of California held that Hague Convention procedures must be applied

19   when the defendant is located in Germany, which is a signatory to the Hague Convention.  The

20   *Agha* Court correctly explained that, although the *Rio Properties* court permitted alternative

21   service under Rule 4(f)(3), the defendant in *Rio Properties* was not located in a country where

22   the Hague Convention was in effect.  *Id.* at *2 ("All of the cases to which [plaintiff] points,

23   however, involve foreign countries that either were not members of Hague Convention or, if

24   they were, had not exercised their rights under Article 10 of that Convention to object to service

25   through 'postal channels.'  In contrast, as [plaintiff] concedes, Germany is a member of the

26   Hague Convention . . . .").  The same rationale applies here.  Moreover, *Agha* holds that the

27   Hague Convention procedures must be employed when the defendant is located in a signatory

28   nation, even if those methods are more difficult:  "[plaintiff] has available to him the method of

accomplishing service in Germany under the auspices of the Hague Convention. Although those provisions are more cumbersome, he is directed to employ them in a timely fashion or to dismiss this complaint." *Id.* Accordingly, Plaintiff can accomplish service under the Hague Convention and this Court should require Plaintiff to do so even if it views such procedures as cumbersome.

Some of the cases relied upon by Plaintiff are distinguishable because the defendants were located in countries that are not signatories to the Hague Convention. In *Bank Julius Baer & Company v. Wikileaks*, No. C-08-00824 (JSW), 2008 WL 413737 (N.D. Cal. Feb 13, 2008) (Pl. Brief, at 6), the court held that service under Rule 4(f)(3) was permitted without requiring plaintiffs to attempt service under Rule 4(f)(1) or 4(f)(2). But the defendants were *not* located in a Hague signatory nation and, therefore, the court did not have to bypass the Hague Convention to allow service under Rule 4(f)(3). The opposite is true here, where the United States, Japan, Denmark and Italy are all signatories to the Hague Convention. Likewise, in *Ehrenfeld v. Salim a Bin Mahfouz*, No. 04-civ-9641 (RCC), 2005 WL 696769 (S.D.N.Y. Mar. 23, 2005) ("*Ehrenfeld*") (Pl. Brief, at 11), where the court granted plaintiff's motion to serve a non-Hague signatory nation under Rule 4(f)(3), the court did not need to ignore the Hague Convention to effect service. Indeed, the court stated that "[b]ecause the Court is not aware of any international agreement that speaks to service of process in Saudi Arabia, Plaintiff needs only to obtain the Court's permission" to serve defendants under Rule 4(f)(3). *Id.* at *2; *see also Wikileaks*, 2008 WL 413737, at *2 (citing *Rio Properties*, 284 F.3d at 1014) ("[u]nder the plain language of Rule 4(f)(3), a plaintiff must show that 'other means' is not prohibited by international service and must obtain a court order to effectuate service in the desired fashion").

Although other cases relied upon by Plaintiff authorized alternative means of service pursuant to Rule 4(f)(3) even though the defendants resided in Hague signatory nations, this Court should decline to follow these cases because they fail to mention or discuss Footnote 4 of *Rio Properties*. In *In re LDK Solar Securities Litigation*, No. C-07-05182 (WHA), 2008 WL 2415186 (N.D. Cal. Jun. 12, 2008) ("*LDK*") (Pl. Brief, at 6-7), the court failed to incorporate Footnote 4 into its reading of *Rio Properties*, instead interpreting the case as

11

1   holding that alternative service is permitted under Rule 4(f)(3) even when the Hague

2   Convention is in effect.  This is incorrect.  *Rio Properties*, 284 F.3d 1014 n.4 ("[a] federal court

3   *would be prohibited* from issuing a Rule 4(f)(3) order in contravention of an international

4   agreement, *including the Hague Convention referenced in Rule 4(f)(1))* (emphasis added).

5   *Nanya Tech. Corp. v. Fujitsu Ltd.,* Civ-06-00025, 2007 WL 269087 (D. Guam Jan. 26, 2007)

6   ("*Nanya*") (Pl. Brief, at 8) is also erroneous.  Indeed, the court stated that the "[defendant]

7   argued that the *Rio* court's holding applies only to situations where the recipient party does not

8   live in a member country of the Hague Convention.  The *Rio Properties* Court however, does

9   not make that kind of distinction nor limit its holding to such circumstances."  *Nanya*, 2007 WL

10  269087, at *5.  This is not true.  Footnote 4 of *Rio Properties* explicitly states that its holding

11  was based on the defendant *not* being located in a Hague signatory country.  *Rio Properties*,

12  284 F.3d at 1014 n.4.

## CONCLUSION

14          The Hague Convention and the Federal Rules of Civil Procedure do not

15  authorize service on foreign defendants through their subsidiaries or U.S. counsel.  If it did, the

16  treaty would be meaningless.  For the reasons set forth herein, the Court should deny the

17  Plaintiff's motion.

19  Dated:  May 29, 2009

20                                          DEWEY & LEBOEUF  LLP

22                                          By:  /s/  Peter E. Root

23                                          Peter E. Root (142348)
                                            proot@dl.com
24                                          1950 University Avenue Suite 500
                                            East Palo Alto, CA 94303-2225
25                                          Tel.  650.845.7000
                                            Fax.  650.845.7333
26

27                                          *Attorneys for Panasonic Corporation and*
                                            *Panasonic Corporation of North America*
28

REED SMITH LLP

By:   /s/  David S. Reidy

David S. Reidy (225904)
Two Embarcadero Center
Suite 2000
San Francisco, CA 94111
Telephone:  (415) 659-5933
Facsimilie:  (415) 391-8269
Email:  dreidy@reedsmith.com

James Andriola
599 Lexington Avenue
New York, NY 10022
Telephone:  (212) 205-6003
Facsimilie:  (212) 521-5450
Email:  jandriola@reedsmith.com

*Attorneys for Defendants Danfoss Commercial
Compressors, Ltd., Danfoss, Inc., Danfoss Scroll
Technologies, LLC, Danfoss Turbocor
Compressors, Inc., Danfoss Compressors LLC
and Danfoss A/S*

GREENBERG TRAURIG LLP

By:  /s/  Cindy Hamilton

Cindy Hamilton (217951)
1900 University Avenue, Fifth Floor
East Palo Alto, CA 94303
Telephone:  (650) 328-8500
Facsimile:   (650) 328-8508
Email: hamiltonc@gtlaw.com

Allan Van Fleet
1000 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone:  (713) 374-3500
Facsimile:   (713) 374-3505

*Attorneys for ACC USA LLC and Appliances
Components Companies S.p.A.*

13

1   GLYNN & FINLEY, LLP

2   By:  /s/  Clement L. Glynn

3   Clement L. Glynn (57117)
    100 Pringle Avenue, Suite 500
4   Walnut Creek, CA 94596
    Telephone : (925) 210-2801
5   Facsimile :  (925) 945-1975
    Email : cglynn@glynnfinley.com
6

7   Leah Brannon
    CLEARY GOTTLIEB STEEN &
8   HAMILTON LLP
    2000 Pennsylvania Avenue, NW
9   Washington, DC  20006

10
    *Attorneys for Defendants Whirlpool Corporation,*
11  *Whirlpool S.A., and Embraco North America, Inc.*

12

13  SQUIRE, SANDERS & DEMPSEY LLP

    By:  /s/  Julie E. Schwartz
14

15  Julie E. Schwartz (Bar No. 260624)
    1 Maritime Plaza, Suite 300
16  San Francisco, CA 94111
    Tel.: (415) 954-0200
17  Fax: (415) 393-9887

18  Edward A. Geltman
    Suite 500
19  1201 Pennsylvania Avenue, N.W.
    Washington, District of Columbia  20004
20

21  *Attorneys for Defendants Tecumseh Products*
    *Company, Tecumseh do Brasil, Ltda., and*
22  *Tecumseh Compressor Company*

23

24

25

26

27

28

1

2          **ATTESTATION PURSUANT TO GENERAL ORDER 45**

3    I, Peter E. Root, am the ECF User whose ID and password are being used to file this

4    Foreign Defendants' Opposition to Bongo Burger, Inc.'s Motion to Authorize Service on

5    Certain Foreign Defendants Pursuant to Fed. R. Civ. P. 4(f)(3).  In compliance with General

6    Order 45.X.B., I hereby attest that concurrence in the filing of this document has been obtained

7    from each of the other signatories.  I declare under penalty of perjury under the laws of the

8    United States of America that the foregoing is true and correct.

9              Executed this 29th day of May, 2009, at East Palo Alto, California.

10

11                       /s/ Peter E. Root
                                  Peter E. Root
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION RE: SERVICE ON FOREIGN DEFENDANTS
CASE NO. 3:09-CV-01836