MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. RUSSELL, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

JOSEPH M. PATANE, ESQ. (72202)
LAW OFFICE OF JOSEPH M. PATANE
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
E-mail: jpatane@tatp.com

Attorneys for Plaintiff Bongo Burger, Inc.
[Additional Attorneys Appear On Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BONGO BURGER, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TECUMSEH PRODUCTS COMPANY, ET AL.,<br><br>Defendants. | Case No. 3:09-cv-01836 MMC<br><br>**PLAINTIFF BONGO BURGER, INC.'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)**<br><br>Date: June 19, 2009<br>Time: 9:00 a.m.<br>Courtroom 7, 19th Floor<br>Honorable Maxine M. Chesney |

# TABLE OF CONTENTS

I. Introduction……………………………………………………………………… 1

II. Argument……...…………………………………………………………………….. 1

    A. The Five Foreign Defendants Have Now Generally Appeared In This Case…………………………………………………………………......... 1

    B. Judicial Economy Will Be Best Served If The Court Rules On This Procedural Motion…………………………………………………………….. 3

    C. The Hague Convention Is Not The Exclusive Means Of Serving A Foreign Defendant Where The Law of The Forum Authorizes Service In The United States……………………………………………………………….. 5

    D. Footnote 4 of *Rio Properties* Does Not Change The Ninth Circuit's Holding That Rule 4(f)(3) Is An Equal Means Of Effecting Service Of Process …………………………….……………………………..……….. 8

    E. The Court Has Discretion Under Rule 4(f)(3) To Authorize Service On A Foreign Corporation Through Its Domestic Subsidiary And Its Counsel…………………………………………………………………….. 13

    F. Plaintiff Does Not Have To Show That It Either Attempted Service By Other Means Or That The Foreign Defendants Have Evaded Service………………………………………………………………………... 14

    G. Plaintiff's And Defendants' Counsel Are Obligated To Litigate This Case Efficiently And Economically ……………………………………………. 15

III. Conclusion ……………………………………………………………………...... 15

ii

**PLAINTIFF BONGO BURGER INC.'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

**TABLE OF AUTHORITIES**

**Cases**

Page

*Agha v. Jacobs,*
  2008 WL 2051061 (N.D. Cal. May 13, 2008) ……………………………………………..10

*Arista Records LLC v. Media Services LLC,*
  2008 U.S. Dist. LEXIS 16485 (S.D.N.Y. Feb. 25, 2008) ……………………………..……12, 13

*Bank Julius Baer & Co. Ltd. v. Wikileaks,*
  Case No. 3:08-cv-00824-JSW, 2008 WL 413737 (N.D. Cal. Feb. 13, 2008) …..…………..…11

*Brockmeyer v. May,*
  383 F.3d 798 (9th Cir. 2004) …………………………………………………………..…..8, 12

*Dreyer v. Exel Indus., Inc.,*
  No. 05-10285, 2007 WL 1584205 (E.D. Mich. May 31, 2007)………………………………..4

*Darden v. DaimlerChrysler N. Am. Holding Corp.,*
  191 F. Supp. 2d 382 (S.D.N.Y. 2002)…………………………………………………………..4

*Ehrenfeld v. Khalid Salim A Bin Mahfouz,*
  2005 U.S. Dist. LEXIS, (S.D.N.Y. March 23, 2005) ………………………………………5, 11

*FMAC Loan Receivables v. Dagra,*
  228 F.R.D. 531 (E.D. Va. 2005) …………………………………………………………..….7

*Henderson v. U.S.,*
  517 U.S. 654 (1996)……………………………………………………………..…………..15

*In Re: Cathode Ray Tubes (CRT) Antitrust Litigation,*
  Case No. 3:07-cv-5944 SC …………………………………………………………5, 7, 8, 12

*In re LDK Solar Securities Litigation,*
  2008 WL 2415186 (N.D. Cal. June 12, 2008) ………................................................11, 13, 14

*Mullane v. Cent. Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950)……………………………………………………………...…………..5

*Nanya Technology Corp. v. Fujitsu Ltd.,*
  2007 U.S. Dist. LEXIS 5754, (D. Guam Jan. 25, 2007) …………………...…..……………11

*Neirbo Co. v. Bethlehem Corp.,*
  308 U.S. 165 (1939)……………………………………………………………………...........2

*Pardazi v. Cullman Medical Center,*
  896 F.2d 1313 (11th Cir. 1990)………………………………………………………………2

iii

**PLAINTIFF BONGO BURGER INC.'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

*Richards v. Harper,*
   864 F.2d 85, 87 (9th Cir. 1988)……………………………………………………………………..2

*Rio Properties, Inc. v. Rio International Interlink,*
   284 F.3d 1007 (9th Cir. 2002) ..……………………………………..…………..……*passim*

*RSM Production Corp. v. Fridman,*
   2007 U.S. Dist. LEXIS 58194, (S.D.N.Y. Aug. 10, 2007)……………………….….5, 7, 12, 13

*Salomon Bros. Inc. v. Huitong Int'l Trust & Inv. Corp.,*
   1997 U.S. Dist. LEXIS 8325 (S.D.N.Y. June 10, 1997)……………………………………….5

*Volksvagenwerk Aktiengesellschaft v. Schlunk,*
   486 U.S. 694 (1988) ………………………………………………………………….…..5, 6, 7

*Williams-Sonoma, Inc. v. Friendfinder, Inc.*,
   2007 U.S. Dist. LEXIS 31299 (N.D. Cal. April 17, 2007) ……………………………………..8

**Rules**

Fed. R. Civ. P. 1……………………………………………………………………………   15

Fed. R. Civ. P. 4(d)(1) ……………………………………………………………………..   15

Fed. R. Civ. P. 4(f)(1)-(2) ……………………………………………………………………   *passim*

Fed. R. Civ. P. 4(f)(3)……………………………………………………………………......   *passim*

Fed. R. Civ. P. 12……………………………………………………………………………..   2, 3

Fed. R. Civ. P. 16 ……………………………………………………………………………   15

**OTHER AUTHORITIES**

Gary B. Born, *International Civil Litigation In United States Courts,*
(4th ed. 2007)……………………………………………………………………………..   7

Wright and Miller, 4B *Federal Practice and Procedure,*
  § 1134 (2009 Supp. at 44)……………………………………………………………..   4

David D. Siegel, Supplementary Practice Commentary C4-24,
28 U.S.C.A. *Fed. R. Civ. P. 4,* AT 73 (West Supp. 2000………………………………   12

I. **Introduction**

Foreign defendants Danfoss A/S, Appliance Components Companies S.p.A, Whirlpool S.A., Tecumseh do Brasil Ltda., and Panasonic Corporation (collectively the "Foreign Defendants" or "Defendants") have now generally appeared in this case to contest this motion through their domestic counsel. Serving this motion on counsel for their domestic subsidiary/parent companies ("Related Domestic Defendants") was sufficient to give the Foreign Defendants actual notice and an opportunity to be heard.

Counsel for the Foreign Defendants do not contest that their clients have actual notice of this case, or that their clients, if properly served pursuant to Rule 4(f)(3), would be unable to present their defenses to the Court. In addition, the Foreign Defendants do not dispute that the method of service proposed by Plaintiff will provide actual notice of this litigation, and comports with constitutional notions of due process. Nevertheless, the Foreign Defendants demand time-consuming and expensive service upon them pursuant to international treaties.

Plaintiff has shown that the facts and circumstances of this case warrant district court intervention. Courts in the Ninth Circuit and throughout the United States have found that formal service of process pursuant to The Hague Convention or Letters Rogatory is an unnecessary expenditure of time and money when, by virtue of its related entities' involvement in the case, the foreign defendant already has notice of the case against it. Faced with identical circumstances here, this Court should do the same.

II. **Argument**

**A. The Five Foreign Defendants Have Now Generally Appeared In This Case**

Plaintiff has moved to serve five Foreign Defendants under Fed. R. Civ. P. 4(f)(3). All five of these defendants have retained counsel and have filed an opposition to the motion. Their opposition to the motion lists the following appearances:

| Foreign Defendant | Counsel |
|---|---|
| Panasonic Corporation | Dewey & LeBoeuf LLP |
| Danfoss A/S | Reed Smith LLP |
| Appliances Components Companies, S.p.A. | Greenberg Taurig LLP |

1

| Whirlpool S.A. | Glynn & Finley, LLP |
|---|---|
| Tecumseh do Brasil, Ltda. | Squire, Sanders & Dempsey LLP |

The Foreign Defendants state at p.1 of their opposition that they are not making a general appearance. They cite no authority, however, for the proposition that they may appear in this case, prior to being served, and contest service (before it is even effected) and raise other issues unrelated to service. By doing so, these Foreign Defendants have generally appeared, thus eliminating any further need to serve them.

"Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Pardazi v. Cullman Medical Center,* 896 F.2d 1313, 1317 (11th Cir. 1990). Because the Foreign Defendants have not yet been served, they were under no obligation to appear and respond to this motion. They have therefore voluntarily invoked the jurisdiction of this Court to seek affirmative relief before being served with process. By doing so, they have generally appeared in the case thus eliminating the need to serve them. *See, Richards v. Harper,* 864 F.2d 85, 87 (9th Cir. 1988) (holding that defendant waived service because he filed a responsive pleading without disputing personal jurisdiction and therefore made a general appearance).

This is not the usual situation where a defendant, *after* being served with process (whether pursuant to Rule 4(f)(3) or otherwise), moves for dismissal under Fed. R. Civ. P. 12(b)(5) for insufficient service of process, or for lack of personal jurisdiction under Rule 12(b)(2). Insufficiency of service of process (or any other defect in personal jurisdiction) is a privileged defense that can be waived "by failure [to] assert [it] seasonably, by formal submission in a cause, or by submission through conduct." *Neirbo Co. v. Bethlehem Corp.*, 308 U.S. 165, 168 (1939); *see, also,* Fed. R. Civ. P. 12(g) and (h).

The Foreign Defendants have voluntarily appeared before being served with process, and they have failed to bring a Rule 12(b)(5) motion to dismiss for insufficient service of process. Instead, they attempt to preemptively argue against Rule 4(f)(3) service. They also go beyond contesting service and seek a stay of this case. They argue service is premature. They argue that

2

**PLAINTIFF BONGO BURGER INC.'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

this Court should not act on the motion properly before it but should defer to an as yet unknown court.  They argue that there is a risk of inconsistent rulings.  Finally, they argue that the law on Rule 4(f)(3) outside of this Circuit is different and unsettled.  Therefore, through these actions, and pursuant to Fed. R. Civ. P. 12(h), the Foreign Defendants' have generally appeared and waived service.

### B. Judicial Economy Will Be Best Served If The Court Rules On This Procedural Motion

Even though the Foreign Defendants have now waived service, the Court should, alternatively, decide this motion on the merits.  The Foreign Defendants urge the Court to defer ruling on this motion because of the pending motions before the JPML.  This motion for court-directed service has now been fully briefed and is ripe for resolution.[1]  All interested parties are before the Court.  The Court should not defer ruling on this motion.  Judicial economy will be best served if the Court rules on this motion because it will resolve a very preliminary, procedural service issue.

If the Court follows the well-settled law of this District and orders service on the Foreign Defendants through their Related Domestic Entities and their counsel pursuant to Rule 4(f)(3), the transferee court will not have to address the issue of foreign service.  Once the Foreign Defendants are served with the summons and complaint in this case, and their lawyers generally appear on their behalf, the Consolidated Amended Complaint (which would include all of the transferred complaints) may be served on them through the transferee court's ECF system.  The transferee court will be able to proceed with pretrial scheduling with all the necessary parties before the court.  It will not have to accommodate the Foreign Defendants appearing later in the case and perhaps seeking to re-argue motions already decided.  Thus, the goals of efficiency and economy for both the courts and the parties are better served by ruling on this motion now.

---

[1] *See, Rule 1.5, Rules of Procedure, Judicial Panel on Multidistrict Litigation* ("The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. §1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.")

3
**PLAINTIFF BONGO BURGER INC.'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

Moreover, the Foreign Defendants' concerns about inconsistent rulings are speculative and unfounded. No other plaintiff has filed a motion for court-directed service pursuant to Rule 4(f)(3). Nor are they likely to file such a motion since, as the Defendants point out, the JPML has already heard oral argument on the motions to transfer, and is expected to rule before the end of this month. The JPML Transfer Order would divest any other transferor court of jurisdiction before it could rule on a motion filed at this stage.

Similarly speculative and unfounded is Defendants' suggestion that the transferee court would rule differently on this motion. First, the cases cited by Defendants are irrelevant to this motion because they do not involve service pursuant to Rule 4(f)(3). Far from dealing with "the precise situation here" (Opposition Brief, p. 3:20-21), *Dreyer v. Exel Indus., Inc.,* No. 05-10285, 2007 WL 1584205 (E.D. Mich. May 31, 2007) and *Darden v. DaimlerChrysler N. Am. Holding Corp.,* 191 F. Supp. 2d 382 (S.D.N.Y. 2002) address service on a foreign defendant through its domestic subsidiary *without* a prior court order directing such service.

Court-ordered service pursuant to Rule 4(f)(3) safeguards the defendant's right to due process because the court will craft a method of service that, under the circumstances of the case, ensures actual notice and an opportunity to be heard.[2] Accordingly, a federal court will only order service on a foreign defendant through its domestic subsidiary where, like here, it can be sure the foreign defendant will receive actual notice. Where a plaintiff wishes to serve a foreign defendant through its domestic subsidiary *without* a prior court order, the law builds in a safeguard and requires the plaintiff to show that the domestic subsidiary is "the foreign parent's general agent…or is so dominated by the foreign parent as to be a 'mere department' of the parent." *Darden,* at 387; Wright and Miller, 4B *Federal Practice and Procedure* § 1134 (2009 Supp. at 44). Because Plaintiff has not attempted to serve the Foreign Defendants' domestic subsidiaries without a prior court order, this body of law is inapposite.

---

[2] "[T]he method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Rio Properties, Inc. v. Rio International Interlink,* 284

4

**PLAINTIFF BONGO BURGER INC.'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

Second, Plaintiff does not only request service on the Foreign Defendants through the Related Domestic Defendants.  Plaintiff also requests an order permitting it to serve the Foreign Defendants through their domestic counsel, who have now appeared before the Court to oppose this motion.  Defendants cannot dispute that many federal courts have ordered service on foreign defendants through their domestic counsel pursuant to Rule 4(f)(3).[3]

Finally, the Foreign Defendants argue that "this is an unusually early juncture for the Court to consider a motion relating to service on defendants," and that somehow Plaintiff should wait to see if the Foreign Defendants are relevant to this litigation.  (Opposition Brief, p. 4:2-6). This argument is untenable.  Service of process on the defendants must be dealt with at the earliest stage of the litigation.  *See,* Fed. R. Civ. P. 4(m) (providing for a 120-day time limit for service of domestic defendants).  Plaintiff has already determined that the Foreign Defendants are relevant to this litigation.  Accordingly, they have been named as defendants and now must be served.  Therefore, the Court should rule on this motion now.

### C. The Hague Convention Is Not The Exclusive Means Of Serving A Foreign Defendant Where The Law of The Forum Authorizes Service In The United States

The Foreign Defendants contend that several experienced jurists in this District are wrong, and that service pursuant to Rule 4(f)(3) is improper here because the Hague Convention is the exclusive means of serving a defendant located in a Hague signatory country.  The Foreign Defendants are incorrect.  According to their own authorities, the Hague Convention is *not* the

---

F.3d 1007 (9th Cir. 2002), *citing Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

[3] *See, e.g., RSM Production Corp. v. Fridman,* 2007 U.S. Dist. LEXIS 58194, * 9-11 (S.D.N.Y. Aug. 10, 2007) ("*RSM Production*"); *Salomon Bros. Inc. v. Huitong Int'l Trust & Inv. Corp.,* 1997 U.S. Dist. LEXIS 8325 (S.D.N.Y. June 10, 1997); *Ehrenfeld v. Mahfouz*, U.S. Dist. LEXIS 4741, (S.D.N.Y. Mar. 23, 2005); *KPN B.V. v. Corcyra D.O.O.*, 2009 U.S. Dist. LEXIS 20906 (S.D.N.Y. Mar. 16, 2009); *In Re Cathode Ray Tube (CRT) Antitrust Litig.* ("*CRT*") Case No. 3:09-cv-5944 SC, Docket No. 374, *Order Granting Indirect Purchaser Plaintiffs' Motion To Authorize Service On Certain Foreign Defendants Pursuant To Federal Rule Of Civil Procedure 4(f)(3)*, at p. 2 (N.D. Cal. Sept. 3, 2008) (hereinafter referred to as the "September 3rd Order" and attached to the Supplemental Declaration of Lauren C. Russell as Exhibit 1).

1  exclusive means of service on a foreign defendant.  In fact, the Hague Convention does not even
2  apply if the law of the forum authorizes service on the foreign defendant within the United States.
3  *See, Volksvagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694 (1988) ("*Volkswagenwerk*").

4      Article 1 of the Hague Convention defines its scope. It says: "The present Convention
5  shall apply in all cases, in civil or commercial matters, *where there is occasion to transmit a*
6  *judicial or extrajudicial document for service abroad.*" 20 U.S.T. 361, 362 [emphasis added]. In
7  *Volkswagenwerk*, the United States Supreme Court engaged in an in-depth analysis of Article 1
8  and the scope of the Hague Convention. The Supreme Court concluded that because "[t]the
9  Convention does not specify the circumstances in which there is 'occasion to transmit' a
10 complaint 'for service abroad,'" it is necessary to "refer to the internal law of the forum state.  If
11 the internal law of the forum state defines the applicable method of serving process as requiring
12 the transmittal of documents abroad, then the Hague Service Convention applies." 486 U.S. at
13 700.  Conversely, where the internal law of the forum state does not require the transmittal of
14 documents abroad in order to effect service on a foreign defendant, then the Hague Convention
15 does not apply.  *Id.* at 701.  Simply put, the Convention "applies only when there is both
16 transmission of a document from the requesting state to the receiving state, and service upon the
17 person for whom it is intended." *Id.* at 701.

18     Applying this standard, the *Volkswagenwerk* Court held that the Convention did not apply
19 to the plaintiff's attempt to serve process on a German corporation by serving the corporation's
20 United States subsidiary because, under the law of the forum and the due process clause, such
21 service was valid and complete in the United States and did not require transmittal of documents
22 abroad. 486 U.S. at 706-708.

23     Here, Fed. R. Civ. P. 4(f) defines the methods for service of process on a foreign
24 defendant. Rule 4(f) provides that such service may be made by means that include international
25 agreements such as The Hague Convention (Rule 4(f)(1)) and Letters Rogatory (Rule 4(f)(2)).
26 *Or*, service may be effected under subsection 4(f)(3), "by other means not prohibited by
27 international agreement, as may be directed by the court."
28

6

**PLAINTIFF BONGO BURGER INC.'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

If the Court directs service on the Related Domestic Defendants and the Foreign Defendants' domestic counsel pursuant to Rule 4(f)(3), service will be valid and complete in the United States.  Like in *Volkswagenwerk*, Plaintiff will not need to transmit documents abroad for service on Defendants.  Accordingly, the Hague Convention will not apply.[4]

All of the Foreign Defendants' authorities support Plaintiff's position that the Hague Convention is not the exclusive means of serving a foreign defendant located in a Hague signatory nation.  In fact, the very language cited in the Foreign Defendants' brief demonstrates that service pursuant to the Hague Convention is only mandatory where documents must be transmitted abroad for service.  For example, the Foreign Defendants quote commentator Gary B. Born as follows:

> Most U.S. courts have concluded that, *if service is to be made in the territory of a contracting state*, and if the Hague Convention is available for such service, then the Convention *must* be complied with.  According to these courts, traditional mechanisms for U.S. *extraterritorial service*…are preempted when service must be made *within a contracting state*….  [A] few lower courts reached contrary conclusions, but these decisions almost certainly do not survive *Volkswagenwerk.*

Gary B. Born, *International Civil Litigation In United States Courts,* 863 & n.4 (4th ed. 2007) Opposition Brief, p.6:8-16 [emphasis added].  The language in italics shows that Mr. Born agrees with Plaintiff.  The Hague Convention is only mandatory where service is "extraterritorial" and must be made "within" or "in the territory of a contracting state."

The Foreign Defendants also quote from the 1993 Advisory Committee Notes: "[u]se of the Convention procedures, when available, is mandatory, *if documents must be transmitted abroad to effect service.*"  Opposition Brief, p. 7:3-6 [emphasis added].  This language also

---

[4] *See, e.g., RSM Production,* 2007 U.S. Dist. LEXIS 58194, * 9-11 (plaintiffs' request for court-directed service on defendant through counsel in the United States pursuant to Rule 4(f)(3) did not implicate the Hague Convention because it did not involve transmittal of documents abroad); *FMAC Loan Receivables v. Dagra,* 228 F.R.D. 531, 534 (E.D. Va. 2005) (same); *CRT, September 3rd Order,* p. 2-3 (same).

7

**PLAINTIFF BONGO BURGER INC.'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

supports Plaintiffs' position because it limits the mandatory nature of the Hague Convention to occasions where "documents must be transmitted abroad to effect service."

Finally, the Foreign Defendants' reliance on *Brockmeyer v. May,* 383 F.3d 798, 801 (9th Cir. 2004) is equally unavailing: "*Because service of process was attempted abroad*, the validity of service is controlled by the Hague Convention, to the extent that the Convention applies." Opposition Brief, p. 7:15-18 [emphasis added]. Once again, this quoted language limits the Convention's mandatory application to a case where service was attempted abroad and therefore required documents to be transmitted abroad.

Thus, the Hague Convention is not the exclusive means of serving foreign defendants. If the Court authorizes Rule 4(f)(3) service on the Foreign Defendants through the Related Domestic Defendants and their counsel, service will be valid and complete in the United States. "[T]he Convention [will have] no further implications."  *Volkswagenwerk,* 486 U.S. at 707.

### D. Footnote 4 of *Rio Properties* Does Not Change The Ninth Circuit's Holding That Rule 4(f)(3) Is An Equal Means Of Effecting Service Of Process

In *Rio Properties, Inc. v. Rio International Interlink,* 284 F.3d 1007 (9th Cir. 2002) ("*Rio Properties*"), the Ninth Circuit states in no uncertain terms: "we hold that Rule 4(f)(3) is an equal means of effecting service of process under the Federal Rules of Civil Procedure." *Id.* at 1016. Yet, the Foreign Defendants claim that Footnote 4 of the *Rio Properties* opinion contradicts this clear holding. This exact argument was specifically rejected by Judge Conti and Judge Legge in *CRT*.[5]  The significance that the Foreign Defendants' attribute to Footnote 4 is contrary to other

---

[5] *See, September 3rd Order,* at p. 3, fn. 3 ("Defendants' reliance on a footnote from Rio Properties is misplaced…. As the Hague Convention, for the reasons stated above, does not apply, this footnote is inapposite."); *see also, CRT*, Docket No. 373, *Report And Recommendations*, p. 2-3, Hon. Charles A. Legge (Ret.) (N.D. Cal. Aug. 29, 2008) (hereinafter referred to as "J. Legge's Recommendation") ("Defendants claim there is an exception for Hague country defendants, based on footnote four of the *Rio* decision. However, the Special Master interprets that footnote as stating only that rule 4(f)(3) can not be used if such service is <u>prohibited</u> by some international agreement. Neither the Hague Convention nor any other international agreement cited to the arbitrator prohibits such service. The Special Master concludes that even if the defendants are domiciled in Hague countries, they can be served with process under rule 4(f)(3).")

8

**PLAINTIFF BONGO BURGER INC.'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

language in the *Rio Properties* opinion, case law interpreting the *Rio Properties* opinion, the language and structure of Rule 4(f), and the Advisory Committee notes on Rule 4(f)(3).

In order to properly understand Footnote 4, it is necessary to put it in context. The relevant text of the *Rio Properties* opinion, including the language before and after Footnote 4, reads as follows:

> RII [defendant] argues that Rule 4(f) should be read to create a hierarchy of preferred methods of service of process. RII's interpretation would require that a party attempt service of process by those methods enumerated in Rule 4(f)(2), including diplomatic channels and letters rogatory, before petitioning the court for alternative relief under Rule 4(f)(3). We find no support for RII's position. No such requirement is found in the Rule's text, implied by its structure, or even hinted at in the advisory committee notes.
>
> By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1)**FN4** or Rule 4(f)(2) [citations omitted]. Indeed, Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f), and each subsection is separated from the one previous merely by the simple conjunction "or." *Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections*; *it stands independently, on equal footing*. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, *and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means.*
>
> > FN4 A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1). The parties agree, however, that the Hague Convention does not apply in this case because Costa Rica is not a signatory.
>
> * * *
>
> Thus, examining the language and structure of Rule 4(f)(3) and the accompanying advisory committee notes, we are left with the inevitable conclusion that service of process under *Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant.*

*Rio Properties,* 284 F.3d at 1014-1016 [emphasis added].

Parroting the language of the defendants in *CRT,* the Foreign Defendants argue that "the placement of Footnote 4 reveals that the Ninth Circuit meant that Rule 4(f)(1) and Rule 4(f)(3)

9

**PLAINTIFF BONGO BURGER INC.'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

were equivalents *only* when the Hague Convention is not effect." Opposition Brief, p. 10:10-12. In other words, the Foreign Defendants contend that Footnote 4 limits the holding of *Rio Properties* to cases involving service on defendants located in non-Hague signatory countries. This argument has no merit.

Rule 4(f)(1) and Rule 4(f)(3) are absolute equivalents. It doesn't matter whether the defendant is located in a Hague signatory country or not. If the Ninth Circuit intended to say that Rule 4(f)(3) service is only equal to Rule 4(f)(1) service when the Hague Convention is not in effect, then why did they not expressly say this? Why did the court instead state, repeatedly, that Rule 4(f)(3) is "as favored" as Rule 4(f)(1); that it "stands independently, on equal footing" to Rule 4(f)'s other subsections; that "no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy" over Rule 4(f)(3); and that "certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means." 284 F.3d at 1014-1016.

Most significant is the Ninth Circuit's express holding:

> [W]e hold that Rule 4(f)(3) is an equal means of effecting service of process under the Federal Rules of Civil Procedure, and we commit to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3).

*Id.* at 1016. None of this language is qualified by the Ninth Circuit. The court never says it is limiting its holding regarding Rule 4(f)(3) to cases involving service in a non-Hague signatory nation.

Moreover, the Foreign Defendants' interpretation of the *Rio Properties* holding is not endorsed by any other case applying Rule 4(f)(3) or *Rio Properties*. Significantly, Defendants cite to only one case which they claim supports their interpretation of *Rio Properties*: *Agha v. Jacobs,* 2008 WL 2051061 (N.D. Cal. May 13, 2008). *Agha* does not, however, support Defendants' interpretation of *Rio Properties*. The plaintiff in *Agha* sought leave of the court to serve defendants located in Germany by email or facsimile. The court held that plaintiff's proposed method of service was improper because Germany had objected to Article 10(a) (which allows service by postal channels), and email and facsimile were the functional equivalent of

10

**PLAINTIFF BONGO BURGER INC.'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

1  postal channels. *Id.* at *2. Because the method of service proposed was expressly prohibited by
2  international agreement, Rule 4(f)(3), which provides for service "by any other means *not*
3  *prohibited by international agreement*," could not apply.
4  Thus, *Agha* does not stand for the broad proposition that "Hague Convention procedures
5  must be employed when the defendant is located in a signatory country." Opposition Brief, p.
6  10:26-28. As the *Agha* court itself recognized, other courts have authorized service by email and
7  facsimile where the foreign country was a member of the Hague Convention but had "not
8  exercised their rights under Article 10 of that Convention to object to service through 'postal
9  channels.'" *Id.* at *2. *Agha's* holding is limited to occasions where the plaintiff proposes service
10 by international mail, or its equivalent, and the Hague signatory nation in which defendant is
11 located has objected to service by postal channels. Therefore, *Agha* is not relevant to this case.
12 Finally, cases applying *Rio Properties* support Plaintiff's interpretation of that case. Rule
13 4(f)(3) is an equal means of service to Rule 4(f)(1) and Rule 4(f)(2), even where service in a
14 Hague signatory nation is involved. This means a plaintiff is not required to attempt service
15 under those subsections before turning to Rule 4(f)(3).[6]
16 Foreign Defendants argue that the Court should disregard *LDK Solar* and *Nanya* because
17 those courts failed to take account of Footnote 4 and, as a result, authorized Rule 4(f)(3) service
18 on defendants located in China and Japan, both of which are Hague signatory nations.
19 Opposition Brief, p. 11:23 - p. 12:12. Once again, Defendants' argument has no merit. In

---

[6] *See, In re LDK Solar Securities Litigation,* 2008 WL 2415186, at *2 (N.D. Cal. June 12, 2008) ("*LDK Solar*"); ("FRCP 4(f)(3) stands independently of FRCP 4(f)(1)… [c]onsequently, plaintiffs are free to attempt an alternate means of service without having to show an attempt of service through the Chinese Central Authority"); *Bank Julius Baer & Co. Ltd. v. Wikileaks,* 2008 WL 413737, at *2 (N.D. Cal. Feb. 13, 2008) ("a plaintiff is not first required to attempt service under Rule 4(f)(1) or Rule 4(f)(2)" before seeking court approval to serve under rule 4(f)(3)); *Nanya Technology Corp. v. Fujitsu Ltd.,* 2007 U.S. Dist. LEXIS 5754, at *16 (D. Guam Jan. 25, 2007) ("*Nanya*") ("the Ninth Circuit Court of Appeals held that each of Rule 4(f)'s three methods for international service of process is equivalent to one another"); *Ehrenfeld v. Khalid Salim A Bin Mahfouz,* 2005 U.S. Dist. LEXIS 4741, at * 4 (S.D.N.Y. Mar. 23, 2005) ("service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant").

addition to *LDK Solar* and *Nanya,* there are many cases which apply *Rio Properties* to order Rule 4(f)(3) service upon a defendant located in a Hague signatory nation.  None of them mention Footnote 4 as limiting the holding of *Rio Properties* to service in non-Hague signatory countries.[7]

Thus, the clear weight of authorities is with the Plaintiff.  Moreover, in *Brockmeyer v. May* (decided 2 years after *Rio Properties*), the Ninth Circuit noted that the plaintiffs could have served the English defendant (England is a Hague signatory nation) pursuant to Rule 4(f)(3), but because the plaintiffs had not petitioned the Court before attempting service, Rule 4(f)(3) was of no use to them.  383 F.3d at 805-806.  The *Brockmeyer* Court cited *Rio Properties* in its discussion of service pursuant to Rule 4(f)(3), but did not indicate that Footnote 4 prohibits such service when the defendant is located in a country which has adopted the Hague Convention.

The fact that no other court has even mentioned Footnote 4 indicates that it was simply the Ninth Circuit reiterating the text of Rule 4(f)(3) itself, which provides that the other means of service ordered pursuant to that Rule must not be "*prohibited* by international agreement." [emphasis added].  In other words, even though service under Rule 4(f)(3) is "as favored" as Rule 4(f)(1), the method of service cannot be expressly prohibited by an international agreement like the Hague Convention.[8]  The Foreign Defendants have not pointed to any international agreement which specifically prohibits the method of service proposed here, and Plaintiff is not aware of any.

The Ninth Circuit was also recognizing that there would be occasions, like in *Agha*, where a particular method of service would be prohibited by an international agreement.  This is not the

---

[7] *See, e.g., Williams-Sonoma, Inc. v. Friendfinder, Inc.*, 2007 U.S. Dist. LEXIS 31299 (N.D. Cal. April 17, 2007) (ordering Rule 4(f)(3) service by email on defendants located in the Ukraine, the Czech Republic, Israel, Switzerland, Norway and England, all of which are signatories to the Hague Convention); *RSM Production,* 2007 U.S. Dist. LEXIS 58194 (ordering Rule 4(f)(3) service on a Russian defendant through service on the defendant's attorney in the United States.  Russia is a signatory to the Hague Convention); and*, Arista Records LLC v. Media Services LLC,* 2008 U.S. Dist. LEXIS 16485 (S.D.N.Y. Feb. 25, 2008) (ordering Rule 4(f)(3) service on a Russian defendant through service on the defendant's attorney in the United States.  Russia is a signatory to the Hague Convention.).

[8] *CRT,* 3:07-cv-5933 SC, *J. Legge's Recommendation,* p. 2; *see, also,* David D. Siegel, Supplementary Practice Commentary C4-24, 28 U.S.C.A. *Fed. R. Civ. P. 4,* at 73 (West Supp. 2000) ("It is only a method barred by 'international agreement,' and presumably specifically barred by that agreement, that the court must stay away from.")

12

**PLAINTIFF BONGO BURGER INC.'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

1  case here. Plaintiff proposes serving the Foreign Defendants through their Related Domestic
2  Defendants and their counsel.  The Hague Convention does not prohibit service on a foreign
3  defendant through its domestic subsidiary or its counsel.  In fact, the Hague Convention does not
4  even apply because service will be valid and complete within the United States. Therefore,
5  Plaintiff's proposed method of service is not prohibited by international agreement and should be
6  authorized by the Court.

### E.  The Court Has Discretion Under Rule 4(f)(3) To Authorize Service On A Foreign Corporation Through Its Domestic Subsidiary And Its Counsel

Foreign Defendants contend that the Federal Rules of Civil Procedure do not authorize service on a foreign corporation through its domestic subsidiaries or its counsel. Opposition Brief, p. 6:21-28.  Once again, the Foreign Defendants are wrong.  Although Rule 4(f)(3) does not specifically state that service may be effected on a foreign corporation through its domestic subsidiary and its counsel, many cases interpreting Rule 4(f)(3) have authorized these methods of service pursuant to that section.[9]

In addition, the *Rio Properties* court committed "to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)." 284 F.3d at 1016.  Here, service on Defendants' United States subsidiaries and their counsel is a particularly appropriate method of service because: 1) Foreign Defendants have actual notice of the case;  2) their related domestic entities are also defendants in this case, have appeared through counsel, and are actively involved in this case; and 3) Foreign Defendants' counsel have voluntarily appeared on their behalf.  Moreover,

---

[9] These cases include, but are not limited to, the following: *Rio Properties,* 284 F.3d at 1017 *(*ordering service on a Costa Rican defendant through service on its attorney in the United States); *LDK Solar*, 2008 WL 2415186 at * 4 (ordering service on several Chinese defendants through service on their subsidiary in California); *CRT,* 3:07-cv-5944 SC, *CRT*, 3:07-cv-5944 SC*, September 3rd Order,* p. 2-3 (authorizing plaintiffs to serve two foreign parent corporations through their subsidiaries and/or counsel in the United States); *RSM Production,* 2007 U.S. Dist. LEXIS 58194*,* at * 9-11 (ordering service on a Russian defendant through service on its attorney in the United States); *Arista Records LLC v. Media Services LLC,* 2008 U.S. Dist. LEXIS 16485, at * 10 (same).

13

**PLAINTIFF BONGO BURGER INC.'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

the Foreign Defendants do not dispute that the methods of service proposed by Plaintiff comports with constitutional due process and will provide actual notice to Defendants. Therefore, this Court will be acting well within its discretion to order that the Foreign Defendants may be served through their Related Domestic Defendants and their counsel.

### F. Plaintiff Does Not Have To Show That It Either Attempted Service By Other Means Or That The Foreign Defendants Have Evaded Service

Before moving for court-directed service under Rule 4(f)(3), Plaintiff does not have to show that it has attempted other means of service, or that the Foreign Defendants have evaded service. Notably, none of the cases cited by Defendants support this assertion. Such a requirement would run contrary to the Ninth Circuit's clear holding that "Rule 4(f)(3) is an equal means of effecting service" and is "neither a 'last resort' nor 'extraordinary relief.'" 284 F.3d at 1015-1016.

The *LDK Solar* court rejected a similar argument by defendants in that case. There, defendants argued that plaintiffs must show that the signatory destination nation has refused to cooperate:

> Again, this argument has little merit. The Ninth Circuit held, 'As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. *No other limitations are evident from the text.*' Rio, 284 F.3d at 1014 (emphasis added). It is unnecessary for plaintiffs to show lack of judicial assistance by the host nation. Instead, plaintiffs 'needed only to demonstrate that the facts and circumstances of the present case necessitated the district court's intervention.'

2008 WL 2415186, at *3. Plaintiff here has demonstrated that the facts and circumstances of this case necessitate district court intervention. This all that is required.

Even though Plaintiff is not required to do so, Plaintiff has shown in its moving papers that it faces substantial expense, difficulty and delay in serving the Foreign Defendants in their home countries pursuant to the Hague Convention and the Inter-American Convention. The

Foreign Defendants do not contest these facts. The methods of service urged by the Defendants are unreasonable and wholly unnecessary. The Foreign Defendants already have notice of this case and have appeared through counsel. Thus, Plaintiff's request that the Court facilitate service upon these Foreign Defendants that already have actual notice of the case, and have already retained counsel to represent them, is entirely justified.

### G. Plaintiffs' And Defendants' Counsel Are Obligated To Litigate This Case Efficiently And Economically

Both Plaintiff's and Defendants' counsel have an obligation to the Court and their clients to litigate this case in the most efficient, cost-effective manner possible. Fed. R. Civ. P. 1 states that cases should be determined in a "just, speedy, and inexpensive" manner. In keeping with this goal of efficiency, Rule 4 states that defendants, including foreign defendants, have "a duty to avoid the unnecessary expenses of serving a summons." Fed. R. Civ. P. 4(d)(1). In addition, Fed. R. Civ. P. 16 suggests that a conference be held early in the litigation to "expedite disposition of the action" and "discourage wasteful pretrial activities." Consistent with this provision, the Supreme Court has made clear that the main function of service is not to comply with a formalistic process, but rather to provide notice of an action's pendency. *See, Henderson v. U.S.,* 517 U.S. 654, 671-72 (1996).

The Foreign Defendants' insistence that Plaintiff goes through the wholly unnecessary, cumbersome procedure of serving them through the Hague Convention and Inter-American Convention is contrary to the general goal of efficiency and economy evident in Rules 1, 4 and 16.

Finally, the Hague Convention was enacted to provide a means to facilitate service of process on a foreign defendant and ensure adequate notice to that defendant. *See, Volkswagenwerk,* 486 U.S. at 704-705. It was never intended to be used as a sword to increase the costs and delay of serving a foreign defendant. This Court should prevent "wasteful pretrial activities" and direct service on the Foreign Defendants pursuant to Rule 4(f)(3).

### III. Conclusion

For all the foregoing reasons, Plaintiff's motion should be granted.

15

**PLAINTIFF BONGO BURGER INC.'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE SERVICE ON CERTAIN FOREIGN DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

| | |
|---|---|
| Dated: June 5, 2009 | **TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP** |

By:  /s/ Mario N. Alioto
Mario N. Alioto (56433)
Lauren C. Russell (241151)
2280 Union Street
San Francisco, California 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

Joseph M. Patane (72202)
**LAW OFFICES OF JOSEPH M. PATANE**
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: jpatane@tatp.com

Sherman Kassof (66383)
**LAW OFFICES OF SHERMAN KASSOF**
954 Risa Road, Suite B
Lafayette, CA 94549
Telephone: (510) 652 2554
Facsimile: (510) 652 9308
E-mail: heevay@att.net

*Attorneys for Plaintiff Bongo Burger, Inc. And All Others Similarly Situated*

### ATTESTATION PURSUANT TO GENERAL ORDER 45

I, Lauren C. Russell, attest that concurrence in the filing of this document has been obtained from the signatory, Mario N. Alioto. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 5th day of June, 2009 at San Francisco, California.

/s/ Lauren C. Russell